[No. A047581. First Dist., Div. Five. Apr. 11, 1990.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
JAMES ALMOND, Real Party in Interest.

608

COUNSEL

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Morris Beatus, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Charles H. James, Public Defender, and David C. Coleman III, Deputy Public Defender, for Real Party in Interest.

## OPINION

HANING, J.—Real party in interest James Almond was found not guilty by reason of insanity (NGI) in 1982, committed to a state mental hospital, and placed on outpatient status in 1986. Respondent superior court is now being asked to decide whether real party should be released outright on the ground that his sanity has been restored. (Pen. Code, § 1026.2.)[1] Respondent court proposed to conduct the sanity restoration hearing without a jury. The People petitioned for an extraordinary writ to compel respondent superior court to permit them to exercise their right to jury trial. We find merit in the People's position and issue a writ of mandate.

Real party initiated the sanity restoration proceedings by filing a petition with the court for his release. (§ 1026.2, subd. (a).) ■ Although real party has a right to a jury trial at such a hearing (*In re Franklin* (1972) 7 Cal.3d 126, 148-149 [101 Cal.Rptr. 553, 496 P.2d 465]; *Barnes* v. *Superior Court* (1986) 186 Cal.App.3d 969, 973-974 [231 Cal.Rptr. 158]), he waived that right. The People contended they had a jury trial right as well and refused to consent to the waiver. The superior court agreed with the People and scheduled a jury trial. Real party filed a petition for extraordinary writ (*Almond* v. *Superior Court (People)*, A047219), which we summarily denied on the ground that the People have a right to a jury trial at a sanity restoration hearing under section 1026.2. (*People* v. *Jones* (1987) 192 Cal.App.3d 400, 402 [237 Cal.Rptr. 410]; *People* v. *Coleman* (1978) 86 Cal.App.3d 746, 750-752 [150 Cal.Rptr. 415].)

While real party's petition was pending in this court, however, his outpatient treatment program sent a letter to the superior court recommending real party's release from outpatient status. Real party then argued that because his own treatment program, rather than he himself, was now urging that sanity had been restored, the court hearing was of a different character such that the People no longer enjoyed a right to trial by jury. The superior court agreed and reversed itself, directing that the hearing proceed to be tried to the court. This petition followed.

---

[1] All further statutory references are to the Penal Code.

At issue here is the interaction between the basic provisions for release of NGI defendants (§§ 1026.1, 1026.2), and certain of the statutes governing outpatient treatment of persons committed to state hospitals, including NGI defendants. (§§ 1606, 1607.) ▮▮ The People contend that the same right of jury trial they enjoy when an NGI defendant petitions for restoration under section 1026.2 also attaches when it is the outpatient treatment program making the request for release. Real party contends that the sanity restoration hearing contemplated by section 1026.2, which normally affords the defendant and the People a mutual right to jury trial, requires only a court hearing when the outpatient treatment program recommends release under section 1607. His argument is essentially one of statutory interpretation based on a distinction he draws between "hearing" and "trial," only the latter assertedly affording the People the right to a jury.

Section 1026.1 provides that "[a] person committed to a state hospital or other treatment facility under the provisions of Section 1026 shall be released" only under "one or more of the following circumstances: [¶] (a) Pursuant to the provisions of Section 1026.2. [¶] (b) Upon expiration of the maximum term of commitment as provided in subdivision (a) of Section 1026.5, except as such term may be extended under the provisions of subdivision (b) of Section 1026.5. [¶] (c) As otherwise expressly provided in Title 15 (commencing with Section 1600) of Part 2." Section 1600 et seq. is the statutory scheme governing outpatient treatment of NGI defendants.

Section 1026.2 provides the procedure for sanity restoration hearings. In subdivision (a) the statute indicates that an "application for the release of a person who has been committed to a state hospital or other treatment facility, as provided in Section 1026, upon the ground that sanity has been restored" may be made in the committing superior court "either by the person [who has been committed], or by the medical director of the state hospital or other treatment facility to which the person is committed or by the community program director where the person is on outpatient status under Title 15 (commencing with Section 1600)."

Thus, only the defendant, his treatment facility if he is confined to an institution, or his community program director if he is an outpatient, may apply for sanity restoration. Whatever the source of the release request, the statute contemplates a judicial proceeding. Section 1026.2, subdivision (a) provides that the superior court "shall give notice of the hearing date to the prosecuting attorney, the community program director or a designee, and the medical director or person in charge of the facility providing treatment to the committed person . . . ." Subdivision (e) describes the hearing mechanism and begins with the typical case in which the NGI defendant has yet to be released as an outpatient. "The court shall hold a hearing to

determine if the person applying for restoration of sanity would no longer be a danger to the health and safety of others, including himself or herself, if under supervision and treatment in the community." If the court finds no such danger, the defendant may be placed in an outpatient program for one year, at the end of which the court conducts automatic review of sanity restoration. Subdivision (f) provides that when a defendant, like real party, has been an outpatient for more than a year, "it is deemed that the applicant has completed the required one year [in an outpatient program] and the court shall, if all other applicable provisions of law have been met, hold the trial on restoration of sanity as provided for in this section."

Section 1600 et seq. contain detailed provisions for the outpatient treatment of NGI defendants and other persons committed to a state hospital. The two sections pertinent here are sections 1606 and 1607. Section 1606 provides for a hearing at the end of one year of outpatient status, at which the trial court may discharge the NGI defendant or renew outpatient treatment. Section 1607 states: "If the outpatient supervisor is of the opinion that the [NGI defendant] . . . is no longer insane, . . . the community program director shall submit such opinion to the medical director of the state hospital, where appropriate, and to the court which shall calendar the case for further proceedings under the provisions of Section . . . 1026.2 of this code . . . ."

Real party's petition for restoration of sanity triggered a section 1026.2 hearing. The letter of the outpatient treatment program recommending his release did likewise. Under section 1607, the transmittal of the release recommendation to the court requires "further proceedings" under section 1026.2. That statute's plain wording contemplates such an "application" by the outpatient program for the restoration of sanity of an NGI defendant. (See § 1026.2, subd. (a).) Such an application would, of course, necessitate judicial proceedings as would an application from the NGI defendant himself or a state hospital, for the simple reason that it is the judiciary, not the treating physicians or facility in which the NGI defendant is confined, which makes the ultimate decision to release.

Real party argues, however, that the quality of the section 1026.2 hearing differs depending on the source of the release application. He contends that if the source is the outpatient program acting under section 1607, the People are somehow deprived of the right to a jury trial they enjoy at section 1026.2 hearings on applications from other sources. Real party's primary argument is based on textual interpretation of the statutes. He first refers to section 1026.1 and its listing of three separate avenues of release of an NGI defendant: (1) after a section 1026.2 hearing; (2) after expiration of maximum treatment period; and (3) as otherwise provided in section 1600

et seq. Attempting to virtually sever section 1026.2 from section 1600 et seq. proceedings, real party then focuses on section 1606's repeated use of the term "hearing" and its failure to use the word "trial," and argues by extension that a section 1607 proceeding would call for a similar "hearing." He argues, without citation to authority, that a "hearing" means a nonjury trial but a "trial" means a jury trial. We disagree. Section 1026.2 uses "hearing" and "trial" interchangeably. (See, e.g., § 1026.2, subds. (b), (d), (f), (i), (k).) No distinction is made based on the presence or absence of a jury, and we are unable to divine the source for such a differentiation.

Real party also contends that a refusal to distinguish between section 1026.2 jury "trials" and sections 1606/1607 "hearings" would render section 1026.1, subdivision (c) surplusage. He contends that section 1026.2 applies only to NGI defendants petitioning for release, and the Legislature obviously so intended by providing a separate clause (§ 1026.1, subd. (c)) mentioning release by recommendation of an outpatient program. There are two flaws in this argument: (1) it confuses a list of three possible ways to achieve release on restoration of sanity with the procedures employed to decide who is released and when; and (2) it overlooks the fact that section 1607 meshes with section 1026.2 by requiring proceedings under section 1026.2 when an outpatient program recommends sanity be restored.

Finally, real party suggests there is a need for a less rigorous hearing because the treatment program, with its mental health expertise, is on his side of the sanity issue. The unspoken premise of this argument is that a committing court need not question or traverse the medical opinion with the help of a citizen jury, but need simply "rubber stamp" a release recommendation. Obviously, this is not contemplated by statute; it is still the judiciary, not the medical experts, which decides whether to release a defendant who has been found to have committed a criminal act while insane. The lack of an adverse relationship between real party and his treatment program does not necessarily alter the nature of the judicial inquiry. The People and the defendant will generally be opposed; the treatment program may normally be on the side of the People if the defendant requests release, but on the side of the defendant if the program recommends restoration of sanity. The alignment shift does not dilute the right of either party, including the People, to submit the release decision to a jury.

We conclude the People are entitled to a jury trial under section 1026.2 regardless of whether it is the NGI defendant or the outpatient treatment program requesting release. Accordingly, the People are entitled to an extraordinary writ. We reach this conclusion after full briefing by the parties and after giving notice we might proceed to issue a peremptory writ in the

first instance. (See *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue compelling respondent Superior Court of Contra Costa County to vacate its order directing that real party's sanity restoration hearing proceed without a jury, and to enter a new and different order directing that the hearing will proceed as a jury trial. The stay of proceedings heretofore imposed is dissolved. To facilitate the relief requested, this matter is final forthwith. (Cal. Rules of Court, rule 24(d).)

Low, P. J., and King, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied May 31, 1990.