[Nos. A064484, A064485. First Dist., Div. Four. Feb. 27, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL W., Defendant and Appellant.

## COUNSEL

Paul Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald Bass, Assistant Attorney General, Ronald S. Matthias and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ANDERSON, P. J.**—Defendant Michael W. (appellant) has been a state hospital patient intermittently since 1981 when he was found not guilty of robbery by reason of insanity under Penal Code[1] section 1026. In 1991 appellant consented to have his commitment extended for two years under section 1026.5, subdivision (b). At the close of that term the state petitioned for an additional two-year extension. Meanwhile, Napa State Hospital (NSH), where appellant is a patient, requested partial conditional leave (grounds pass privileges) for appellant pursuant to State Department of Mental Health special order No. DSH-133.[2] Appellant again stipulated to the extension with the understanding that the court would consider the grounds pass petition. It did, and denied the grounds privileges.

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]"*Special Order:* Judicially committed patients shall be allowed unescorted access outside the secured areas of a state hospital only when approved by the court of commitment in response to a request as specified in the attached procedures.

"*Authority:* By authority of the Deputy Director of the Division of State Hospitals; Sections 1026.6, 1603 and 1604 of the Penal Code; and *In re Cirino,* 28 C.A. 3d 1009.

"*Purpose:* To grant conditional leave to judicially committed patients for the purpose of implementing treatment plans designed for community re-entry and to ensure that any conditional leave granted to judicially committed patients is in full conformity with statute and case law.

"*Method:* Before conditional leave is granted to any judicially committed patient, an application is to be submitted in accordance with the attached procedures and approved by the court of commitment. This requirement applies to any patient committed under Sections 1026,

Appellant appeals that denial. He contends the court erred in placing the burden of proof on him and that there is no substantial evidence to support a factual conclusion that NSH's grant of grounds privileges was not appropriate. We conclude that appellant bore the burden of proof and that the court properly exercised its discretion in denying a pass and, therefore, we affirm.

## I. FACTS

Appellant's history of bank robbery began in 1969. Since that time the longest period he has gone without robbing a bank is three years.

Appellant stated he robbed banks to obtain money to purchase alcohol and so that he could escape to Israel as he had become frightened of Nazis he believed were experimenting on him and following him. He prefers banks because bank policy requires tellers to provide him money on demand; this way he does not need to be armed and does not need to risk anyone's life. Instead, appellant uses "a little psychology" to frighten tellers. In 1989 appellant threatened to kill a teller and a customer and warned that "an innocent person could die on the street" should the teller send someone after him before a reasonable time. He has also intimated that he was armed. Appellant has previously been committed to state institutions based on findings of not guilty of robbery by reason of insanity.

Two experts testified in support of the grounds pass at issue herein. NSH psychiatric social worker Diane Dagan testified that the decision to request grounds privileges was a team decision agreed to by appellant's doctor, social worker, psychologist, rehabilitation therapist and registered nurse, and it also had the hospital administrator's approval. The hospital personnel requested the grounds pass because they believed appellant could be trusted to stay on the grounds. Appellant at last appeared able to replace his dependency on alcohol with a dependency on people. This dependency on staff members, Dagan said, would allow the hospital staff to influence appellant. NSH psychiatrist, Dr. Philip Hicks, also recommended the grounds pass, noting appellant's "rather dramatic change."

The requested pass would authorize appellant to leave his unit at NSH during specified hours and visit certain areas of the hospital. Before being allowed to leave the unit, staff would monitor appellant by talking to him, observing him, writing down a description of what he is wearing and discerning his intended destination. While on grounds pass, appellant would be required to check in with the staff every hour. Appellant would not be

---

1370, and 2972 of the Penal Code and Sections 702.3 and former 6316 (now repealed) of the Welfare and Institutions Code."

allowed to leave the hospital grounds; however, the grounds do not have walls and are only partially fenced. Dagan estimated it takes her approximately 10 to 15 minutes to walk from appellant's unit to a public street; she did believe it would take appellant "a lot" longer to reach the street because he is overweight, is "kind of slow" and has emphysema.

Appellant is said to function fairly normally under medication in the hospital setting. Dagan testified a staff observer would be able to detect whether appellant had taken his medication when observing him before allowing him out of the unit. Without his medication, appellant was paranoid, anxious, depressed and frantic; he could not sit still and wouldn't listen. Hicks believed appellant would be conscientious about taking his medications. Dagan could not predict appellant's behavior if he walked away from NSH without taking his medication. Dagan was aware of appellant's prior history of bank robbery and acknowledged he could possibly walk away and repeat the pattern.

Appellant has left treatment programs in the past; he testified he went "A.W.O.L." at one point on release from the hospital. Appellant does not dispute he has robbed banks in the past while on outpatient status. Appellant has completed an alcohol and drug education program and stated his medication has become important to him. He stated he now realizes the Nazis no longer have the power to do anything to him.

The People presented testimony by three experts familiar with appellant. Federal Bureau of Investigations Special Agent Harry Fujita testified he had investigated 10 bank robberies committed by appellant. San Francisco Police Officer Thomas Vigo had investigated 12 or 13 robberies involving appellant since 1978. Dr. Douglas Korpi is a psychologist who has known appellant for 19 years. Korpi testified appellant used to "cheek" his medication, that is, put it to the side of his mouth and then spit it out. Korpi testified appellant appears sincere, but he gets paranoid, does not let you know and keeps up his sincere "veneer." Korpi noted that appellant has been institutionalized for over the last 20 years and when he is out in the street he becomes fearful almost immediately. On the issue of the grounds pass, Korpi testified, ". . . I take no position" because he believed as long as appellant was near the institution the fear would stay in abeyance. However, Korpi also testified he "did not like the idea of a grounds pass"—it put appellant that much closer to robbing a bank. He stated that he "could not feel stronger . . . that this guy is going to rob a bank again." ". . . [A]s soon as he gets away from the institution."

## II. Discussion

### A. *The Court has Jurisdiction to Hear State Hospital Grounds Pass Issues*

■ Section 1026 does not expressly refer to grounds pass issues. However, it confers jurisdiction on the court which committed the defendant to make release decisions. The statute states, in relevant part: ". . . A defendant committed to a state hospital or other treatment facility or placed on outpatient status . . . shall not be released from confinement, parole, or outpatient status *unless and until the court* which committed the person shall, after notice and hearing, find and determine that the person's sanity has been restored. . . ." (§ 1026, subd. (b), italics added.) Thus, the court's authority does not end with the commitment of the defendant. (*In re Cirino* (1972) 28 Cal.App.3d 1009, 1014 [105 Cal.Rptr. 194].)

In *In re Cirino, supra,* 28 Cal.App.3d at page 1011, Cirino was committed to Atascadero State Hospital (and later transferred to NSH) after being found not guilty by reason of insanity for the murder of his daughter. At a clinical conference regarding grounds privileges for Cirino, a dispute arose as to the superior court's jurisdiction in such a matter. The superior court later denied grounds privileges under section 1026. (28 Cal.App.3d at p. 1011.) Cirino filed a petition for habeas corpus. (*Ibid.*) The sole issue on appeal was whether the committing superior court had jurisdiction to override a state hospital's decision granting grounds privileges. (*Ibid.*) The court found the superior court had jurisdiction. (*Id.* at p. 1016.)

The court in *In re Cirino, supra,* 28 Cal.App.3d at page 1014, reasoned the committing court has continuing power to "make whatever orders are necessary to make the confinement effective" until the court determines that sanity has been restored. Without such continuing authority, the court's ability to determine when sanity has been restored could be jeopardized by the disappearance of the patient. In addition, public safety might be compromised should a patient on grounds pass privileges leave the grounds of an unfenced facility such as NSH. State Department of Mental Health special order No. DSH-133 cites *In re Cirino* as authority for requiring court approval for grounds privileges outside the secured areas of a state hospital.

### B. *The Court's Denial of a Grounds Pass Is Appealable*

The court's denial of a grounds pass is appealable under section 1237, subdivision (b), as an order affecting appellant's substantial rights. Appellant's petition for a grounds pass is a request to alter the conditions of his confinement under section 1026. (*In re Cirino, supra,* 28 Cal.App.3d at p.

1014.) Denying appellant grounds privileges affects his ability to move around the grounds and attend educational classes. The grounds pass is also an "integral" part of an eventual showing of restoration to sanity. (*Id.* at pp. 1012-1013.) Denial of these privileges affects appellant's substantial rights and, therefore, is appealable under section 1237, subdivision (b).

### C. *The Court Properly Placed the Burden of Proof on Appellant*

■ Appellant declares that because the grounds pass issue was before the court as part of the continuation of the People's petition to extend commitment for two years, the People bear the burden of proof. We disagree. While there is no statutory or case law specifically on this point, Section 1026 and Evidence Code section 500 lead us to conclude that the burden of proof rests with appellant.

Appellant contends the People have the burden of proof because they are petitioning to overrule the hospital's decision to grant grounds pass privileges. However, in this case it was appellant who first petitioned for grounds pass privileges. The hospital was *recommending* to the court, on appellant's behalf, that a grounds pass be issued. The hospital could not issue the grounds pass without the court's approval. Therefore, contrary to appellant's contentions, appellant acted as petitioner in this case, with the hospital supporting his request for grounds privileges. Further, at the hearing on the petition to extend appellant's commitment, the superior court accepted appellant's stipulation to an extension of commitment[3] which he conditioned on a subsequent hearing on the pass privilege petition. That hearing was held two months later, after the extension of commitment issue had been resolved. Thus, the only pending matter was the grounds privileges pass.

Neither case law nor the statute supports the contention that the People must bear the burden of proof on a patient's petition to alter the conditions of confinement. In an application for release from confinement on the grounds that sanity has been restored, the applicant has the burden of proof by a preponderance of the evidence under section 1026.2, subdivision (k). At the time of these proceedings, section 1026.2, subdivision (e)[4] required the court to hold a hearing to determine whether the applicant would pose a danger to the health and safety of others because of mental defect, disease or disorder. If an applicant was found not to pose a danger, the applicant was

---

[3]The court had accepted the stipulation on April 21, 1993, with the understanding appellant would file a writ of habeas corpus. The record does not explain why the issue was again before the court.

[4]Effective January 1, 1995, one year of outpatient status is no longer a prerequisite to release. The current statute states that "the burden of proving that sanity has been restored shall be upon the applicant. . . ." (§ 1026.2, subd. (d).)

placed in outpatient status for one year after which a trial was held to determine whether sanity had been restored.

Although an application for grounds privileges is not the same as an application for release under section 1026.2, it is similar because it, in effect, asserts a sufficiently improved mental condition to permit conditional release on a grounds pass. The court in *In re Cirino* noted it not improbable that, " 'grounds privileges,' if unlimited except by the boundaries of the hospital grounds at Napa State Hospital, may present dangers akin to, if not so great as, parole . . . ." (*In re Cirino, supra,* 28 Cal.App.3d at p. 1015.) The court referred to the large number of escapes and "walkaways" from NSH. (*Id.* at pp. 1015-1016.) Public safety is a factor underlying the release requirements under section 1026.2 and also the issuance of grounds privileges. Bearing this concern in mind, the court properly placed the burden of proof on appellant to show that he had improved sufficiently so as not to pose a danger to the surrounding community.

Evidence Code section 500 also supports placing the burden of proof on appellant. It states: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." Here it was necessary to show that appellant had progressed sufficiently so that he would not pose a danger to the public if he were granted grounds privileges. This determination is essential to support a claim for grounds privileges.

Finally, appellant contends that in the absence of a knowing, intelligent and voluntary waiver by appellant, his counsel had no authority to stipulate to the burden of proof. However, the court did not rely upon the stipulation, but actually found, quite correctly, that appellant had the burden of proof.

### D. *The Court Did Not Abuse Its Discretion in Denying the Grounds Pass*

Appellant contends the trial court made factual findings which were not supported by substantial evidence. The People, on the other hand, contend that no factual findings were made and that the appropriate standard of review is abuse of discretion. Because section 1026 does not make specific reference to grounds privileges and there is no case law directly on point, we look for guidance to other provisions of the statute concerning restoration of sanity proceedings, transfers and requests for outpatient status. These statutory provisions, and case law interpreting them, indicate that decisions related to patient release or transfer are to be reviewed under an abuse of discretion standard.

Under section 1026, patients are not released "unless and until the court which committed the person shall . . . determine that the person's sanity has

been restored. . . ." (§ 1026, subd. (b).) In addition to restoration of sanity proceedings, section 1026, subdivision (c), also authorizes a court to approve transfers of defendants to or between treatment facilities, upon receiving written recommendation from the hospital medical director and/or the community program director. Where a transfer is contested and the court determines there are sufficient grounds for a hearing, the court "shall use the same procedures and standards of proof as used in conducting probation revocation hearings pursuant to Section 1203.2." (*Ibid.*) Under section 1203.2, subdivision (b), the court may modify, revoke or terminate probation as "the interests of justice so require." Case law holds that revocation of probation decisions are reviewed under an abuse of discretion standard. (*People* v. *Rodriguez* (1990) 51 Cal.3d 437, 443 [272 Cal.Rptr. 613, 795 P.2d 783].) In *Rodriguez*, the defendant appealed the revocation of his probation (*id.* at p. 440), and the Supreme Court, in considering the proper standard of proof in revocation of probation hearings (*ibid.*), noted as follows: " '. . . only in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation. . . .' " (*Id.* at p. 443, quoting *People* v. *Martin* (1943) 58 Cal.App.2d 677, 683-684 [137 P.2d 468].) Thus, contested transfer decisions under section 1026, subdivision (c), are to be reviewed under the same abuse of discretion standard.

Decisions denying outpatient status are also reviewed under an abuse of discretion standard. (*People* v. *Sword* (1994) 29 Cal.App.4th 614, 624-625 [34 Cal.Rptr.2d 810].) Outpatient treatment, unlike grounds pass privileges, is governed by specific statutes. (§ 1600 et seq.) Both doctor and release program expert recommendations are prerequisites to obtaining a hearing for outpatient status, but the trial court must approve these recommendations before granting outpatient status. (§§ 1602, 1603, 1604; *People* v. *Sword*, *supra*, 29 Cal.App.4th at pp. 628-629.) The court makes the final determination: "[I]t is still the judiciary, not the medical experts, which decides whether to release a defendant who has been found to have committed a criminal act while insane." (*Id.* at p. 628, quoting *People* v. *Superior Court (Almond)* (1990) 219 Cal.App.3d 607, 612 [268 Cal.Rptr. 375].) The court noted that in outpatient or restoration of sanity proceedings the court's duty was not to "rubber-stamp" the recommendations of medical experts, but to apply a community standard in determining dangerousness in a release decision. (*People* v. *Sword*, *supra*, 29 Cal.App.4th at p. 628.)

We find that the same considerations used to determine restoration of sanity or outpatient status are applicable to grounds privileges considerations. In each of these three situations the patient is released from fully supervised confinement. Although the three vary greatly in scope, the rationale for providing court discretion in any of these forms of release appears to

be the consideration of public safety. We cannot say these considerations would be any less important in the case of grounds privileges, particularly where the institution is not fenced. In appellant's case, the court's concern was that NSH did not have fences or gates to prevent patients from leaving the premises while on grounds privileges.

### III. Conclusion

We find that the trial court has wide discretion to decide the grounds privileges issue and the trial court's decision should be reviewed under an abuse of discretion standard. When the lower court has discretion to decide an issue, its "exercise of discretion will not be disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice [citations]. In other words, discretion is abused only if the court exceeds the bounds of reason, all of the circumstances being considered." (*People* v. *Stewart* (1985) 171 Cal.App.3d 59, 65 [215 Cal.Rptr. 716].) In *Sword* the court found no abuse of discretion even where there was "ample evidence of lack of dangerousness presented" and no current expert testimony to support the conclusion that the defendant was dangerous. (*People* v. *Sword*, *supra*, 29 Cal.App.4th at p. 626.) The *Sword* court reasoned that the trial court was entitled to consider the validity of the opinions presented to it in making its determination. (*Ibid.*) In appellant's case the court heard expert testimony from appellant and the People. The court was not obligated to follow the hospital's recommendations, because it had to determine, independently in its discretion, whether grounds privileges were appropriate for appellant at this time. Based on the evidence presented and circumstances considered we cannot say the court's decision was manifestly unjust or beyond the bounds of reason.

The order is affirmed.

Poché, J., and Perley, J., concurred.