Filed 5/1/14  P. v. Abraham CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>ARTHUR ABRAHAM,<br><br>          Defendant and Appellant. | A138799<br><br>(San Mateo County<br>Super. Ct. No. SC014720) |

Defendant Arthur Abraham appeals from the trial court's denial of his petition under Penal Code section 1026.2[1] to be released from Napa State Hospital and placed in a conditional-release program.  He argues that the trial court's order was not supported by substantial evidence that he would present a danger to the health and safety of others if granted a conditional release.  We affirm.

I.
### FACTUAL AND PROCEDURAL BACKGROUND

Abraham was committed to the Department of Mental Health, and eventually placed at Napa State Hospital (Napa), after being found not guilty by reason of insanity in two cases in which he was charged with sexually assaulting his common-law wife, and later murdering her and killing the fetus she was carrying.  These cases were resolved in 1985 and 1987, and their procedural history was described in our unpublished opinion in *People v. Abraham* (July 21, 1997, A074868).

---

[1] All statutory references are to the Penal Code.

1

In January 2013, Abraham filed a petition under section 1026.2 seeking placement in a conditional-release program. He filed at least two such petitions previously, both of which were denied.[2] In April 2013, a hearing was held on the instant petition, and competing evidence was presented on whether Abraham's mental disorders would endanger the health and safety of others if he were to be conditionally released. The evidence Abraham presented consisted primarily of testimony by three expert witnesses, who testified that Abraham was not likely to be dangerous if he were conditionally released. The evidence the People presented consisted primarily of testimony by one expert witness, a Napa staff psychiatrist, and a report prepared by a liaison with a conditional-release (CONREP) program, both recommending against Abraham's conditional release.[3] At the conclusion of the hearing, the trial court denied Abraham's petition.

This timely appeal followed.

## II.
### DISCUSSION

#### A.    The Standard of Review.

The parties disagree whether we should review the trial court's order for an abuse of discretion or to determine whether it is supported by substantial evidence. The cases most directly on point hold that an order denying a petition for a conditional release under section 1026.2 is reviewed for an abuse of discretion. (*People v. Dobson* (2008) 161 Cal.App.4th 1422, 1433; *People v. Cross* (2005) 127 Cal.App.4th 63, 73; *People v. Sword* (1994) 29 Cal.App.4th 614, 619, fn. 2.) But other cases considering similar types of orders have reviewed those orders to determine whether they were supported by substantial evidence. (See, e.g., *People v. Rasmuson* (2006) 145 Cal.App.4th 1487, 1504 (*Rasmuson*) [review of order denying conditional release of sexually violent offender];

---

[2] We affirmed the denial of those petitions in *People v. Abraham, supra,* A074868, and *People v. Abraham* (Sept. 28, 2007, A115860) [nonpub. opn.].

[3] On September 25, 2013, we granted a motion to augment the record on appeal with a copy of the CONREP report.

*People v. Crosswhite* (2002) 101 Cal.App.4th 494, 507 [review of order *extending* commitment in state hospital under section 1026.5]; *People v. DeGuzman* (1995) 33 Cal.App.4th 414, 420 [review of order *revoking* conditional release]; *People v. Michael W.* (1995) 32 Cal.App.4th 1111, 1114 [review of order denying grounds privileges to person committed to state hospital].)

Abraham argues that notwithstanding the more direct precedent we should apply the substantial-evidence test. In support of his argument, he cites *Rasmuson, supra*, 145 Cal.App.4th 1487 and *People v Gregerson* (2011) 202 Cal.App.4th 306. *Rasmuson* involved an order denying a conditional release to a sexually violent predator (*Rasmuson,* at p. 1491), and *Gregerson* involved an order denying a conditional release to a mentally disordered offender (*Gregerson,* at p. 310). Both appellate courts reviewed the trial courts' denial of a conditional release under the substantial-evidence test. (*Rasmuson,* at p. 1505; *Gregerson,* at p. 320.) Abraham argues that we should use this test here because his liberty is at stake and, like the statutory conditional-release provisions applicable in *Rasmuson* and *Gregerson,* section 1026.2 is mandatory by requiring a petition for a conditional release to be granted if the statutory criteria is established.

We need not resolve which standard of review applies because we conclude that the trial court's order must be sustained under either of them. " 'The practical differences' between the abuse of discretion and substantial evidence standards of review 'are not significant.' " (*People v. Gregerson, supra,* 202 Cal.App.4th at pp. 319.) Under the substantial evidence test, we evaluate the entire record, drawing all reasonable inferences in favor of the trial court's findings. We do not make credibility decisions, nor do we reweigh the evidence. We simply determine whether there is sufficient, substantial evidence supporting the trial court's ruling. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-578.) Under the abuse-of-discretion standard, we defer to the trial court unless its ruling exceeds the bounds of reason. (*People v. Cross, supra,* 127 Cal.App.4th at p. 73.) A trial court's ruling exceeds the bounds of reason if "the factors cited by the trial court in denying [a petition for a conditional release] either are not supported by the record or are inadequate." (*Id.* at p. 75.) " ' "Evaluating the factual basis for an exercise of

3

discretion is similar to analyzing the sufficiency of the evidence for the ruling. . . . Broad deference must be shown to the trial judge. The reviewing court should interfere only ' "if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did." ' " ' " (*Gregerson,* at pp. 319-320.) Accordingly, we turn to consider whether sufficient evidence was presented under these standards and conclude that it was.

> B. *The Trial Court's Order Was Supported by Substantial Evidence and Was Not an Abuse of Discretion.*

A defendant who is found to be not guilty of an offense by reason of insanity is relieved of all criminal responsibility for the offense. Instead of being punished, the defendant is committed to a state hospital for treatment and for the protection of both the defendant and society. (*People v. Dobson, supra,* 161 Cal.App.4th at p. 1432.) When treatment goals or other circumstances suggest that the defendant's mental state has improved, a judicial determination that the defendant has regained sanity may be pursued through a two-step process. The first step, which is the one relevant to this appeal, involves filing a petition for the defendant to participate in a conditional-release program. (§ 1026.2, subd. (a).) A hearing is held on the petition, and the trial court determines whether a preponderance of the evidence has shown that the defendant "will not be a danger to the health and safety of others, due to mental defect, disease, or disorder, while under supervision and treatment in the community." (§ 1026.2, subds. (e) & (k).[4]

Abraham argues that the trial court's denial of his petition must be reversed because he introduced strong evidence, in the form of testimony by his three experts, that

---

[4] The second step occurs after the defendant successfully participates in the conditional-release program for a year. At that point, the court "shall have a trial to determine if sanity has been restored." (§ 1026.2, subds. (e) & (f).) Again, the defendant must be found to be no longer dangerous by proof by a preponderance of the evidence. (§ 1026.2, subd. (k); *People v. Dobson, supra,* 161 Cal.App.4th at p. 1433.) But until such a showing has been made, it is reasonable to infer that the defendant is both mentally ill and dangerous in light of the prior judicial determination that he or she was not guilty of the underlying offense by reason of insanity. (*People v. Sword, supra,* 29 Cal.App.4th at p. 624*; In re Franklin* (1972) 7 Cal.3d 126, 141.)

4

he was no longer dangerous, while the People introduced weak evidence that he remains dangerous. This argument, however, misunderstands our appellate role. "When a judgment is attacked for insufficiency of the evidence, the appellate court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that some reasonable trier of fact could find that the judgment and each essential element thereof was established by the appropriate burden of proof." (*Rivard v. Board of Pension Commissioners* (1985) 164 Cal.App.3d 405, 414.) "A judgment will not be reversed based on an evaluation of the *strength* of the opposing evidence or the relative weakness of supporting evidence when compared to opposing evidence. It can be reversed based only on the *absence or insubstantiality* of supporting evidence, as determined from a review of all related evidence in the record.[] (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 252)." (*Id.* at p. 413, fn. omitted, italics in original.)

After having reviewed the entire record, we conclude that sufficient evidence was presented upon which the trial court could have relied in denying the petition. We begin by discussing the CONREP report. This report recommended against Abraham's conditional release. Among other things, it reported that Abraham still presented a significant risk of being dangerous, still had mental problems, still treated women inappropriately, and still had failed to complete important treatment programs. We discuss each of these concerns as they were presented in the report.

First, the report found that Abraham still presented a significant risk of being dangerous. The report explained that "[f]our violence risk assessments were done[,] three completed by Dr. Novak . . . and one completed by Dr. Geca . . .[,] which show that Mr. Abraham poses an[] overall moderate to high risk for violent recidivism. These instruments include the Hare Psychopathy Checklist (moderate to high rating), the Violence Risk Appraisal Guide (moderate risk), and the Sex Offender Risk Appraisal Guide (Moderate Risk). Mr. Abraham has a history of poor anger controls and assaultive behavior which led to his instant offense." Elsewhere, the report indicated that Abraham "continues to remain medium to high risk for dangerousness as he is continuing to exhibit

the same behaviors he demonstrated at the time of his instant offense. Risk assessments from [Napa] have placed him at medium to high risk and nothing has changed in this regard."

Second, the report found that Abraham's mental problems persisted. The report found that Abraham "has no insight into his narcissism or Antisocial Personality Disorder and does not understand why they place him at a high risk for reoffense. He experiences his being incarcerated as a narcissistic injury and vents his anger at staff about his circumstances which he takes no[] responsibility for." The report stated that Abraham "continues to have problems with his anger and feels like a victim[;] both contributed to his instant offense and continue to be treatment issues Mr. Abraham needs to work on in treatment."

Third, the report found that Abraham continued to treat women inappropriately. The report noted that Abraham had recently been transferred from a unit housing both men and women to an all-male unit due to improper interactions with females. It observed that Abraham "is now on an all male locked unit . . . due to him focusing on a female peer (risk factor due to his crime)." He was transferred because he was "having problems with previous staff and [was] in the process of decompensating." The report stated that Abraham "has a sustained pattern of looking at women as inferior to him and takes rejection too personal[ly]. . . . This risk factor is still present. . . . The risk of repeating the offense is high given that he has a repeated pattern of interaction with female staff over his commitment time at DMH [Department of Mental Health] with significant pathological reaction to the perceived rejection." And the report mentioned that Abraham was "noted to be demanding and verbally aggressive towards female staff," and "[h]e perceives himself [to be] superior to others, especially women." Later, the report stated that Abraham "continues to have a condescending superior attitude towards female staff and peers, and has exhibited verbally aggressive behavior toward nursing staff in the last year. These behaviors and attitudes are disturbingly similar to the ones he held at the time of his crime where he raped and shot his common law wife out of feelings of rejection and abandonment."

6

Finally, the report found that Abraham had not completed important treatment programs, particularly programs related to treating sexual offenders. The report stated that Abraham is "dismissive of the idea that he would benefit from treatment groups." And it reported that "[h]e insists that he has completed Phase II Sex Offender Treatment, however there are no records reflecting this. He is resistant to attending Sex Offender treatment in general." Later, the report repeated that Abraham "has refused the need for sex offender groups and minimizes the need for this type of treatment."

The findings of the CONREP report were reinforced and elaborated upon in testimony by the People's expert, Hameed Jahangiri, M.D. Dr. Jahangiri was a staff psychiatrist at Napa at the time of the hearing. He testified that Abraham was transferred from an open unit to Dr. Jahangiri's unit because of problems Abraham was having with female peers and staff members. He had been condescending, overly critical, and demeaning to women, which was concerning given his criminal history. Soon after his transfer, Abraham had an initial interaction with Dr. Jahangiri in which he expressed his regret for having lied about being psychotic (to gain his commitment to a state hospital) but stated that he had done well in sex-offender treatment. After this initial interaction, Abraham withdrew and stopped communicating with staff.

Dr. Jahangiri's treatment team included psychologists and social workers. It was Dr. Jahangiri's understanding that the conditional-release petition had been initiated by Abraham, not by his treatment team. Dr. Jahangiri testified that he submitted a report to the trial court explaining that Abraham suffered from a personality disorder with narcissistic, antisocial, and borderline traits. Although he could not formally diagnose Abraham with antisocial personality disorder because such a diagnosis requires evidence of conduct before the age of 15, evidence that was unavailable, Dr. Jahangiri explained that Abraham nonetheless had antisocial personality traits as manifested by lying, disrespect of the law and people, manipulation of people, and inability to conform to social norms. Dr. Jahangiri and his team agreed that Abraham needed to complete sex-offender treatment before being considered for release because he had scored relatively

7

high for possible recidivism. Dr. Jahangiri flatly opined that Abraham posed a danger to himself or others if he were placed outside a secure facility.

This evidence—the CONREP report and Dr. Jahangiri's testimony—provides ample support for the trial court's decision to deny Abraham a conditional release. While we recognize that Abraham presented three experts who forcefully disagreed with many of the findings, conclusions, and opinions of the CONREP report and Dr. Jahangiri, our inquiry is constrained to whether the evidence, when viewed in the light most favorable to the trial court's order, was sufficiently reasonable, credible, and of solid value to permit the trial court to enter its order. (See *People v. Manibusan* (2013) 58 Cal.4th 40, 87 [applying substantial-evidence test in reviewing a criminal conviction].) The evidence presented in this case easily satisfied that standard. And since we conclude that substantial evidence supports the trial court's decision to deny the petition, we also conclude that the denial was not an abuse of discretion.

III.
DISPOSITION

The judgment is affirmed.


_____
Humes, J.


We concur:


_____
Reardon, Acting P.J.


_____
Rivera, J.

8