Filed 10/13/21  P. v. Larson CA3

# NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>IAN KEITH LARSON,<br><br>    Defendant and Appellant. | C091578<br><br>(Super. Ct. No. CM018145) |

In 2003, defendant Ian Keith Larson pleaded no contest to several crimes and was found not guilty by reason of insanity.  In 2019, defendant petitioned the trial court for outpatient treatment under Penal Code section 1026.2.[1]  After holding a hearing on the petition, the trial court denied the petition finding defendant was a danger to the health

---

[1] Undesignated statutory references are to the Penal Code.

1

and safety of others due to mental defect, disease, or disorder. On appeal, defendant challenges this finding, arguing the trial court abused its discretion. We affirm.

BACKGROUND

*Underlying Offense*

During a drug-induced psychotic episode, defendant broke into his landlady's home with a baseball bat and forced her to orally copulate him. Defendant was charged with forcible oral copulation (§ 288a, subd. (c)(2), count 1) with enhancements (§ 667.61, subds. (a), (b), and (e)), assault with the intent to commit a felony (§ 220, count 2), assault with a deadly weapon by means likely to produce great bodily injury (§ 245, subd. (a)(1), count 3), criminal threats (§ 422, count 4), and first degree residential burglary (§ 459, count 5).

On November 3, 2003, defendant pleaded no contest to counts 1, 3, and 5, and admitted the enhancements to count 1. He also pleaded not guilty by reason of insanity. On January 26, 2004, the trial court found defendant not guilty by reason of insanity and committed him to the Department of State Hospitals.

*Petition for Outpatient Treatment*

In May 2019, defendant filed a petition under section 1026.2 for outpatient treatment. Two doctors testified regarding defendant's petition. Dr. Don Stembridge, a forensic clinical psychologist, was appointed by the court for defendant and submitted a report for the purposes of defendant's petition. Dr. Ana Kodzic, a forensic evaluator at defendant's hospital, testified for the People and her most recent progress report on defendant, dated July 30, 2019, was submitted into evidence.

*Dr. Stembridge*

On January 30, 2020, Dr. Stembridge testified, largely reading from his report, that defendant did not pose a substantial danger to others if released from the hospital. He said defendant had shown significant improvement in the hospital, including recovering from illicit substance use, reduced his antisocial attitudes, and understood his

2

need for ongoing treatment and supervision if transferred to a supervised treatment facility. Dr. Stembridge also said defendant had no incidences of violence or serious rule breaking for four years, although in February 2019, defendant insisted to hospital staff that he be provided pain medication, going to multiple staff members, which showed poor boundaries and "staff-splitting" behavior.

Dr. Stembridge also testified that as of July 2019, defendant "remained asymptomatic, consistent with a lack of psychotic disorder," his "mood disorder being in remission," and he had "maintained behavioral stability for 53 months." He noted that defendant's treatment team and evaluators agreed "he does not suffer from a major mental health illness and has been essentially asymptomatic for the past 4 years." He also agreed with their conclusion that defendant does not "have a major psychiatric illness."

Dr. Stembridge explained that, though defendant had antisocial traits, he did not have antisocial personality disorder. Instead, Dr. Stembridge testified that he would diagnose defendant as having an "unspecified personality disorder with antisocial personality traits." He further explained that defendant "does not qualify as having any major psychiatric illness so he . . . can't really be a danger due to a psychiatric illness that he doesn't have." Thus, Dr. Stembridge concluded defendant should "certainly be considered for a step-down placement out of" the hospital, although he testified that he believed defendant should only be released to a "locked" and "highly structured treatment environment."

*Dr. Kodzic*

On February 6, 2020, Dr. Kodzic testified defendant "doesn't have a severe mental illness that we would normally find in a psychiatric facility" but does have a remissive major depressive disorder, remissive substance abuse disorders, and "antisocial personality disorder." She explained antisocial personality disorder is a disorder in the DSM-5, so it is a "psychotic or a mood disorder." She acknowledged defendant had not

3

recently acted physically aggressive, but he had broken small rules consistent with antisocial personality disorder, like misusing pain medication, signing out inappropriately, and talking back to a staff member. Though the incidences of rule breaking are "insignificant" on their own, "the overall pattern does speak to an inability to conform to societal norms." Dr. Kodzic also testified defendant's substance abuse disorders were in remission but was a high-risk situation for him, and "if he's med seeking, then that is not an appropriate behavior for the high risk situation."

Dr. Kodzic believed the issue of whether defendant would pose a danger to others was a "tough one." There are "a lot of risk factors that would increase his dangerousness, but there are also controls in place that would mitigate those risks" so the "risk factors and protected factors" are "about even." Ultimately, Dr. Kodzic felt defendant posed a "moderate risk." This meant the degree of risk depended on "what the contingencies would be for him if he were to be released into the community." But at the hearing she declined to provide a final opinion on whether defendant was appropriate for outpatient treatment, saying she was "happy that [she doesn't] have to make that decision; ultimately, the trier of fact does."

Dr. Kodzic's July 2019 progress report stated defendant did continue to pose a danger to others due to a mental defect, disease, or disorder and recommended the hospital "retain and treat" him. But Dr. Kodzic conceded she also stated multiple times throughout her report that defendant was not mentally ill and appeared psychiatrically stable with no psychotic and/or mood disorders. Dr. Kodzic explained the seemingly contradictory testimony as "one of those things where clinical practice and the law do not speak the same language . . . . When I say that he isn't mentally ill, by that I mean he doesn't have a mood or psychotic disorder that would originate from a chemical imbalance or structural changes in the brain that would respond to psychotropic medication. When I say that he has Antisocial Personality Disorder, what I mean by that is he has a pattern of behavior that fits into a certain criteria that is different from the

4

norm" and is "in the DSM-5." Though had she authored a report specifically for this hearing, she thought "it would be likely that [she] would suggest that [defendant] be placed in outpatient treatment."

*Court's Ruling*

After taking the matter under submission, and relying on the testimony of Drs. Stembridge and Kodzic as well as theirs and others' reports, the trial court found "by a preponderance of the evidence that [defendant] would be a danger to the health and safety of others due to a mental disorder if under the supervision and treatment in the community."

The court explained it was "basing its decision on the fact that there was evidence presented to the Court that [defendant] continues to engage in manipulative behavior and conduct. Although he has made tremendous progress in his treatment over the course of the last five years, there still appears [to be] areas that he needs to work on. There is evidence that during the most recent reporting period, [defendant] engaged in staff splitting. In addition to that behavior, there was evidence of drug seeking behavior when he attempted to obtain extra pain medication from hospital staff. That is a particular concern in light of the fact that the behavior for the underlying offenses, such as the [not guilty by reason of insanity] finding were fueled by his use of the illicit substances. [¶] More importantly, these behavioral issues caused the Court concern about his overall judgment and his ability to control his behavior in a less structured environment."

The trial court commended defendant on his progress and thought that he was "very close to being ready to transition into outpatient treatment . . . but he's not quite there yet based on what has been presented."

DISCUSSION

Defendant argues the court improperly denied his petition because there is no evidence he is exhibiting any psychotic symptoms or that he currently suffers from a primary psychotic disorder. He posits that the psychosis that led him to be an insanity

acquittee has been resolved so there no longer exists a basis to hold him in commitment. The People counter that it does not matter whether defendant still qualifies as legally insane because he currently poses a danger due to a mental disorder. They assert Dr. Kodzic diagnosed defendant with antisocial personality disorder and Dr. Stembridge diagnosed him with an unspecified personality disorder, each being sufficient to deny outpatient treatment. We agree with the People.

"A person who has been found not guilty by reason of insanity and committed to a state hospital may apply to the superior court for release from commitment 'upon the ground that sanity has been restored.' " (*People v. Bartsch* (2008) 167 Cal.App.4th 896, 899.) "The court shall hold a hearing to determine whether the person applying for restoration of sanity would be a danger to the health and safety of others, due to mental defect, disease, or disorder, if under supervision and treatment in the community. If the court at the hearing determines the applicant will not be a danger to the health and safety of others, due to mental defect, disease, or disorder, while under supervision and treatment in the community, the court shall order the applicant placed with an appropriate forensic conditional release program for one year." (§ 1026.2, subd. (e).)

The defendant "shall have the burden of proof by a preponderance of the evidence." (§ 1026.2, subd. (k).) To carry their burden, the defendant must show "that she is '*either* no longer mentally ill *or* not dangerous.' " (*People v. McDonough* (2011) 196 Cal.App.4th 1472, 1491; *Foucha v. Louisiana* (1992) 504 U.S. 71, 77 ["the acquittee may be held as long as he is both mentally ill and dangerous, but no longer"].) "The court makes the final determination: '[I]t is still the judiciary, not the medical experts, which decides whether to release a defendant who has been found to have committed a criminal act while insane.' " (*People v. Michael W.* (1995) 32 Cal.App.4th 1111, 1119.)

"We review the court's order for an abuse of discretion. [Citation.] 'Under that standard, it is not sufficient to show facts affording an opportunity for a difference of opinion. . . . "[D]iscretion is abused only if the court exceeds the bounds of reason, all of

6

the circumstances being considered." ' " (*People v. Bartsch, supra*, 167 Cal.App.4th at p. 900; *People v. Dobson* (2008) 161 Cal.App.4th 1422, 1433.)

The trial court did not abuse its discretion here because its decision found support in the testimony of both doctors. Dr. Kodzic testified defendant has antisocial personality disorder, which is a "psychotic or a mood disorder" in the "DSM-5." She explained the conflict with this diagnosis and her later testimony and statements in her report that defendant did not suffer from a mental illness were due to the nomenclature used between clinical practice and law. She then confirmed again that defendant *does* have antisocial personality disorder. Dr. Kodzic's progress report also concluded defendant was still a danger to others and testified she found defendant's overall pattern of rule breaking exhibited an inability to conform to societal norms. This included defendant's medicine seeking behavior, which was not appropriate for his high-risk substance abuse disorder. Although she acknowledged the ultimate decision was a tough one and that she might now recommend outpatient treatment, she refused to make a final recommendation.

Dr. Stembridge's testimony also supports the trial court's ruling. Though Dr. Stembridge ultimately believed defendant would not be a danger, he did acknowledge defendant still suffered from an "unspecified personality disorder with antisocial traits," still broke rules, still posed a risk, even if a moderate one, and most telling, said defendant still should be in a locked facility. This latter testimony significantly undercuts the weight of his position that defendant did not pose a danger.

Even if experts unanimously agree a defendant no longer has a mental illness and does not pose a danger, a court does not abuse its discretion by denying a section 1026.2 petition if the decision was not arbitrary. (*People v. Cross* (2005) 127 Cal.App.4th 63, 73 ["The trial court was not required to follow the essentially unanimous recommendations of the expert witnesses"]; *People v. Sword* (1994) 29 Cal.App.4th 614, 629-631 [finding the trial court did not abuse its discretion in not following the unanimous "recommendations of the doctors and other expert witnesses" because it disregarded

7

"those recommendations for nonarbitrary reasons"].)  Defendant's case is not so extreme. Both expert witnesses provided evidence of defendant's ongoing mental disorder *and* potential danger to the community, which leads us to conclude the trial court's denial of defendant's petition was not an abuse of discretion.

Finally, defendant also argues that California's process of requiring a committed individual who is no longer insane to prove he will not pose a danger violates a constitutionally protected liberty interest.  This argument has been unanimously rejected by other courts.  (See *People v. Sword, supra,* 29 Cal.App.4th at pp. 622-624 [finding "no due process problem with the California procedure" under section 1026.2]; *Hartman v. Summers* (C.D. Cal. 1995) 878 F.Supp. 1335, 1344 ["requiring an insanity acquittee to rebut the presumption of continuing mental illness and dangerousness by a preponderance of the evidence does not violate the Due Process Clause of the Fourteenth Amendment"].)  We are persuaded by the analyses in those cases and reject defendant's contention for the same reasons.

### DISPOSITION

The judgment (order) denying the petition is affirmed.

          /s/
Duarte, J.

We concur:

    /s/
Raye, P. J.

    /s/
Hull, J.