Filed 7/15/21  P. v. Weed CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. DAGAN NOKSI WEED, Defendant and Appellant. | B301436 (Los Angeles County Super. Ct. No. TA143782) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael J. Schultz, Judge.  Affirmed and remanded with directions.

Julie Caleca, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and Blythe J. Leszkay and Nicholas J. Webster, Deputy Attorneys General for Plaintiff and Respondent.

# INTRODUCTION

Dagan Noksi Weed appeals from the trial court's order revoking his probation and imposing a five-year prison sentence the court had previously suspended.  The trial court found Weed willfully violated the terms of his probation when he took two cars belonging to his wife, Christina Payano, one (a Lexus) on April 5, 2019 and one (a BMW) on August 25, 2019.  The trial court also found Weed used force on April 5, 2019 when he hit Payano three times with a backpack and kicked her in the face.

Weed argues substantial evidence did not support the trial court's finding he violated the terms of his probation because Payano testified at the probation violation hearing she lied to the police about the physical altercation.  He also argues any violation was not willful because he believed he had permission to drive the cars.  And Weed argues we should strike the two one-year enhancements the trial court imposed under Penal Code section 667.5, subdivision (b),[1] because Senate Bill No. 136 (Senate Bill 136), which limits that enhancement to defendants who served a prior prison sentence for a sexually violent offense, applies retroactively to cases, like his, that are not final.

We conclude that substantial evidence supported the trial court's order revoking probation and that Senate Bill 136 applies to Weed's sentence.  We also conclude the appropriate remedy is a limited remand for the trial court to allow the parties to withdraw from the plea agreement and seek the trial court's approval of a new sentence.

---

[1]     Statutory references are to the Penal Code.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Weed Pleads Guilty to False Imprisonment by Violence, and the Trial Court Places Him on Probation*

The People charged Weed with false imprisonment by violence (§ 236), willful infliction of corporal injury resulting in a traumatic condition on a spouse (§ 273.5, subd. (a)(1)), and battery committed against a spouse or person with whom the defendant is cohabiting (§ 243, subd. (e)(1)). The People also alleged that Weed had one prior serious or violent felony conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12) and that he served two prior prison terms within the meaning of section 667.5, subdivision (b).

Weed pleaded guilty to false imprisonment by violence and admitted the two prior prison term allegations, and the court dismissed the other charges and allegations pursuant to the plea agreement. On August 13, 2018 the court imposed and suspended execution of a five-year prison sentence, consisting of a three-year term for false imprisonment by violence and two one-year enhancements under section 667.5, subdivision (b), and placed Weed on probation.

B. *Weed Takes Payano's Lexus Without Permission*

On April 5, 2019 Payano contacted the Los Angeles Police Department to report a carjacking and told Officer David Torres that, while she was moving her Lexus for trash collection day, Weed approached the passenger-side window and tried to take the keys from the car. Payano stated that, when she got out of the car to talk to Weed, he hit her three times with a backpack.

3

Payano fell to the ground, and Weed kicked her in the mouth. Weed drove away in the Lexus. Payano showed Officer Torres a cut on the inside of her lip she said she received when Weed kicked her. Officer Torres testified Payano was crying and visibly upset.

C.     *Weed Takes Payano's BMW Without Permission*

On August 15, 2019 Payano reported to the police that the previous day Weed had again taken a car from her, this time a BMW, without permission. Later that day, Officer Joseph Braun responded to a radio call concerning a possible assault with a deadly weapon. Officer Braun drove to the scene, and Payano flagged him down from her car. Payano told Officer Braun that she had just returned from the police station and that Weed was "over there" near a BMW. Officer Braun saw Weed and detained him. After Officer Braun read Weed his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694], Weed stated he took the keys to the car the previous day from a hook in Payano's home. Weed stated that Payano called him numerous times asking him to return the car, but that he refused because he was with a friend.

Payano called Weed's probation office and spoke with Probation Officer Jamaal Hawkins. Payano told Officer Hawkins that Weed stole her BMW, which was in her mother's name, and that she was going to file a report at the police station. Payano subsequently went to the probation office, spoke again with Officer Hawkins, and told him she "had a tussle" with Weed earlier in the day when she tried to take the car keys from him. Payano also told Officer Hawkins the police had arrested Weed. Payano explained that, given her small stature, she was "in no

4

. . . situation to be getting into physical altercations" with Weed and that she was afraid of him.

### D. *The Trial Court Revokes Weed's Probation and Sets a Probation Violation Hearing*

On August 29, 2019 the trial court, after considering a probation report and a motion by the prosecutor, revoked Weed's probation. The trial court remanded Weed to custody and set a probation violation hearing for September 12, 2019.

### E. *Payano Recants at the Probation Violation Hearing*

Officers Torres, Braun, and Hawkins testified at the probation violation hearing, as did Payano. Payano confirmed that on April 5, 2019 she called the police because Weed took her Lexus without her consent and did not return it when she asked him to. Payano stated that Weed had a key to the Lexus, that she did not see Weed take the car, and that there was no physical altercation on April 5, 2019. Payano also testified that she lied to the police about the assault because she was angry Weed had taken her car without permission and that most of her statements to the police were not true.

Payano also confirmed that on August 15, 2019 she went to the police station and reported that Weed had taken her car the previous day without permission and refused to return it. Payano further confirmed that, after she left the station, she flagged down a police car she saw driving toward her mother's home and told the officers Weed had taken her car without her permission. Payano, however, denied she had a physical altercation with Weed and said she did not remember anything else she told the police that day. Payano stated that she went to

5

Weed's probation office to discuss Weed's mental health issues with his probation officer and that she told Officer Hawkins that Weed had taken her car without her consent. Payano testified that she exaggerated and lied about the physical altercation and that she loved Weed and did not want anything bad to happen to him.

F.  *The Trial Court Revokes Weed's Probation and Imposes the Five-year Sentence*

The trial court found by a preponderance of the evidence Weed had willfully violated the terms of his probation. The trial court found that Payano's testimony at the hearing was designed to convince the court Weed was "not violent or a domestic abuser" and had not been violent toward or abused her in the past. The court found her testimony that Weed had not engaged in domestic violence was "clearly impeached" and not credible. The trial court also found that Weed took the cars without consent and that Weed used force to take the Lexus by hitting Payano with the backpack and kicking her.

The trial court revoked Weed's probation and imposed the five-year prison term. The court stated it was concerned about the safety of Weed, those who loved him, and the community. Weed timely appealed.

## DISCUSSION

A.  *Applicable Law and Standard of Review*

"Section 1203.2, subdivision (a), authorizes a court to revoke probation if the interests of justice so require and the court, in its judgment, has reason to believe that the person has

6

violated any of the conditions of his or her probation. [Citation] "'When the evidence shows that a defendant has not complied with the terms of probation, the order of probation may be revoked at any time during the probationary period.'"" (*People v. Urke* (2011) 197 Cal.App.4th 766, 772, fn. omitted; see *People v. Leiva* (2013) 56 Cal.4th 498, 504-505.)

"The standard of proof in a probation revocation proceeding is proof by a preponderance of the evidence." (*Urke, supra,* 197 Cal.App.4th at p. 772; see *People v. Rodriguez* (1990) 51 Cal.3d 437, 447 ["proof of facts supporting the revocation of probation pursuant to section 1203.2(a) may be made by a preponderance of the evidence"].) The evidence must show "'the probationer's conduct constituted a willful violation of the terms and conditions of probation.'" (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295; see *People v. Galvan* (2007) 155 Cal.App.4th 978, 982.) "In essence, the issue at a probation revocation hearing is whether the defendant's conduct demonstrates that the leniency extended by the grant of probation remains justified." (*People v. Garcia* (2006) 39 Cal.4th 1070, 1087.)

We review the trial court's finding a defendant violated the terms of his or her probation for substantial evidence. (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318; *People v. Urke, supra,* 197 Cal.App.4th at p. 773; *People v. Kurey* (2001) 88 Cal.App.4th 840, 848.) On review for substantial evidence, "great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.'" (*Urke,* at p. 773; see *Kurey,* at pp. 848-849 ["our review is limited to the determination of

whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision"].) "'"[O]nly in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation."'" (*Urke*, at p. 773.) We review a trial court's decision to revoke and terminate probation for abuse of discretion. (See *People v. Rodriguez, supra*, 51 Cal.3d at p. 443; *People v. Michael W.* (1995) 32 Cal.App.4th 1111, 1119.

B.  *Substantial Evidence Supported the Trial Court's Finding Weed Violated the Terms of His Probation*

Weed argues substantial evidence did not support the trial court's finding he violated the terms and conditions of his probation by assaulting Payano and taking her cars without permission. Weed focuses on the fact that, at the probation hearing, Payano said she lied to the police about the assault. Weed also argues that he did not know he needed Payano's permission to use the cars and that, had he physically assaulted Payano, her injuries would have been a lot worse.

Substantial evidence supported the trial court's findings. It was undisputed Weed took Payano's Lexus on April 5, 2019 and her BMW on August 15, 2019. The evidence showed that Weed knew he needed Payano's permission to take the cars and that Weed knew he was using the cars without consent. Payano testified that she often told Weed he had to ask her if he wanted to use the car, that she told the police Weed took the Lexus without her consent, and that he did not return it when she asked him to. Payano made similar statements about the BMW taking on August 5, 2019. Weed confirmed to Officer Braun that

8

Payano had asked him to return the BMW, but that he refused because he was busy.[2]

Weed argues Payano was not a credible witness because she said she lied to the police about the April 5, 2019 incident. Weed also argues the small cut on Payano's lip was too minor of an injury to show that Weed used force to take the Lexus or that a physical struggle had occurred. Officer Torres, however, testified Payano told him Weed struck her three times with a backpack and kicked her in the face when she fell. Although Payano testified these statements were lies, the trial court was entitled to believe Officer Torres's statements about what Payano told him had occurred on April 5, 2019, and disbelieve Payano's attempts at the probation violation hearing to change her story. (See *People v. Gomez* (2018) 6 Cal.5th 243, 280-281 ["'[i]n deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts,'" and "'[r]esolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact' [citation] in the 'absence of patent falsity, inherent improbability, or other reason to question [the testimony's] validity'"]; *People v. Jones* (2013) 57 Cal.4th 899, 963-964 ["'we must accord due deference to the trier of fact and not substitute our evaluation of the witness's credibility for that of the fact finder,'" and "'unless the testimony is physically

_____

[2]    Weed also argues he thought he had the legal right to take the cars because they were community property. But Payano testified that the cars were hers and that Weed did not have permission to take them. And, even if the cars were community property, Weed did not have the right to use violence to take them.

impossible or inherently improbable, [the] testimony of a single witness is sufficient to support a conviction'"].)

That Payano's injuries were limited and did not require medical treatment did not preclude the court from disbelieving Payano's testimony. There was no direct evidence of how much force Weed used to take the Lexus on April 5, 2019. The trial court reasonably could have concluded Weed assaulted Payano with enough force to take the car, but not enough to cause extensive injuries. Indeed, the court stated Weed may have assaulted Payano to humiliate her, not to inflict serious injury.

C.    *Senate Bill 136 Applies to Weed's Two One-year Sentence Enhancements*

In enacting Senate Bill 136, the Legislature amended section 667.5, subdivision (b), effective January 1, 2020, to limit the sentence enhancement to prison terms imposed for specific violent sexual offenses. (See Stats. 2019, ch. 590, § 1.) Senate Bill 136 applies to all cases not yet final. (*People v. Esquivel* (2021) 11 Cal.5th 671, 673; see *People v. Hernandez* (2020) 55 Cal.App.5th 942, 947 (*Hernandez*) ["Senate Bill 136 applies retroactively to all defendants whose judgments were not yet final as of the statute's effective date"], review granted Jan. 27, 2021, S265739.)

Weed argues, the People concede, and we agree his case is not final because the trial court, when it placed Weed on probation, imposed and suspended execution of a five-year prison sentence and because he can still obtain direct review of the trial court's order revoking probation and imposing the five-year sentence. As the Supreme Court held in *People v. Esquivel*, *supra*, 11 Cal.5th 671, a case is not yet final for purposes of

10

Senate Bill 136 when "a defendant is placed on probation with execution of an imposed state prison sentence suspended" because the defendant can "still timely obtain direct review of an order revoking probation and causing the state prison sentence to take effect." (*Esquivel,* at p. 673.)  The Supreme Court in *Esquivel* explained that a case like Weed's is not final under *In re Estrada* (1965) 63 Cal.2d 740 because the defendant has "not yet exhausted direct review of the order causing his carceral punishment to take effect.  The time for him to seek that review had not expired.  And he had not successfully completed probation." (*Esquivel*, at p. 678; cf. *People v. Chavez* (2018) 4 Cal.5th 771, 782, [the trial court's power is "significantly attenuated" once the probation period ends].)  Therefore, Weed is entitled to the benefits of Senate Bill 136.

D.    *The Trial Court Must Dismiss the Two Sentence Enhancements Under Section 667.5, Subdivision (b), but the Court Cannot Impose the Rest of the Sentence*

Weed argues the proper remedy is to strike the two one-year sentence enhancements under section 667.5, subdivision (b), and leave the rest of the sentence intact, which would reduce his prison sentence from five years to three.  The People argue the appropriate remedy is to allow the prosecutor to accept the reduction on Weed's sentence or to withdraw consent to, or to renegotiate, the plea agreement.  The People's position is more consistent with the Supreme Court's decision in *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*).

In *Stamps* the Supreme Court held that Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393), which authorizes a trial court to dismiss in the interest of justice a

serious felony enhancement under section 667, subdivision (a), did not authorize the trial court to modify a plea agreement by striking the enhancements. (*Stamps, supra*, 9 Cal.5th at p. 692.) The Supreme Court concluded a trial court could dismiss the enhancement and leave the plea agreement intact only if the Legislature in enacting Senate Bill 1393 "intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385." (*Stamps,* at p. 701.) After analyzing the legislative history of Senate Bill 1393, the Supreme Court held that Senate Bill 1393 did not entitle defendants to """"whittle down"""" their sentences and that the Legislature did not intend "to overturn existing law regarding a court's lack of authority to unilaterally modify a plea agreement. Indeed, none of the legislative history materials mention plea agreements *at all*." (*Stamps,* at pp. 702, 706.)

Weed argues there is a "significant difference" between Senate Bill 1393, which gives the trial court discretion to strike enhancements, and Senate Bill 136, which eliminates an enhancement for all but a limited number of crimes. Weed relies on *People v. France* (2020) 58 Cal.App.5th 714, review granted February 24, 2021, S266771, where the court held that the Legislature, in enacting Senate Bill 136, required courts to strike certain one-year enhancements by "making the enhancement portion of [the defendant's] sentence illegal" and that "construing Senate Bill 136 to allow the People to withdraw from plea deals containing the affected enhancements could prevent the Legislature from fully realizing its goals of departing from mass incarceration, saving money on prison costs, and keeping families together." (*France*, at pp. 729-730.) The court in *France* modified the judgment by striking the one-year enhancement under

12

section 667.5, subdivision (b). (*France,* at p. 730.) Several courts have agreed with *France.* (See *People v. Stewart* (2021) 62 Cal.App.5th 1065, 1077 ["'That the parties enter into a plea agreement . . . does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them.'"], review granted June 30, 2021, S268787; *People v. Andahl* (2021) 62 Cal.App.5th 203, 215 ["[w]e find *France* the better-reasoned opinion and agree that the remedy discussed in *Stamps* has no application to the legislative action invalidating the one-year sentence enhancements"], review granted June 16, 2021, S268336.)

The People rely on *Hernandez*, *supra*, 55 Cal.App.5th 942, review granted, where the court held that the enhancements under section 667.5, subdivision (b), "were integral to the plea agreement and the specified sentence" and that the trial court does not have the authority to modify the plea agreement after striking the enhancements. (*Hernandez*, at p. 957.) The court in *Hernandez* concluded that, although the trial court "must dismiss the two prior prison term enhancements that were an integral part of defendant's specified sentence, it cannot unilaterally modify the plea agreement by keeping the remainder of the bargain intact, and the People may withdraw from the plea agreement." (*Id.* at pp. 958-959.) Several courts have agreed with *Hernandez.* (See *People v. Ruggerio* (June 25, 2021, B305655) ___ Cal.App.5th ___, ___ [2021 WL 2619978, p. 1] [California law does not allow the trial court to make ""'unilateral changes to a material term of the plea agreement" without the consent of the prosecution'"]; *People v. Houle* (2021) 64 Cal.App.5th 395, 400 [*Stamps* "forecloses [the] defendant's initial argument that the enhancements should be stricken but

13

the remainder of the plea bargain left intact"]; *People v. Griffin* (2020) 57 Cal.App.5th 1088, 1095 [same], review granted Feb. 17, 2021, S266521.)  The Supreme Court granted review in *Hernandez* to resolve this split in authority.[3]

In the meantime, we conclude *Hernandez* is more consistent with the Supreme Court's decision in *Stamps*.  As the court in *Hernandez* explained, "there is no evidence the Legislature intended Senate Bill 136 to permit the trial court to unilaterally modify a plea agreement once the prior prison term enhancements are stricken."  (*Hernandez*, *supra*, 55 Cal.App.5th at p. 958, review granted; see *People v. Ruggerio*, *supra*, ___ Cal.App.5th at p. ___ [p. 1].)  "'Whether by withdrawal of its prior approval or the granting of a withdrawal/rescission request by one or both of the parties, the trial court "'"must restore the parties to the status quo ante."'"  [Citations.]  The parties may then enter into a new plea agreement, which will be subject to the trial court's approval, or they may proceed to trial on the reinstated charges.'"  (*People v. Griffin*, *supra*, 57 Cal.App.5th at p. 1096, review granted; see *Ruggerio*, at p. ___ [p. 2] [once the court strikes the enhancement, the prosecution is entitled to withdraw its consent to, and the court may withdraw its approval

---

[3]     In particular, the Supreme Court granted review to decide (1) whether, if a defendant's prior prison term enhancements are stricken under Senate Bill 136, the remainder of the sentence agreed to under a plea agreement remains intact or the case must be remanded to allow the People to withdraw from the plea agreement and to obtain the trial court's approval and (2) whether, if the plea agreement is rescinded in light of Senate Bill 136, the court can sentence the defendant to a term longer than provided for in the original agreement.

of, the plea agreement]; *Hernandez*, at p. 960 [the People are
""""entitled to the same remedy as the defendant—withdrawal of
assent to the plea agreement""""].)

## DISPOSITION

The order revoking Weed's probation is affirmed.  The trial
court is directed to dismiss Weed's two one-year sentence
enhancements and to allow the parties to reconsider the plea
agreement.


SEGAL, J.


We concur:



PERLUSS, P. J.



FEUER, J.


15